MILLER v. THE CHICAGO, MILWAUKEE & ST. PAUL R'Y Co.

1. **Bill of Exceptions:** IDENTIFICATION OF EVIDENCE. The bill of exceptions in this case stated that "the evidence taken in this cause by the official reporter is all the evidence taken therein. Said report of evidence is entitled in the cause and filed therein April 9, 1886, and certified by said reporter and the judge of this court, and marked 'Exhibit A' to this bill of exceptions." A translation of the reporter's notes was made, certified by the reporter and judge, and filed in the clerk's office, but neither the original notes nor the translation was marked "Exhibit A" and attached to the bill of exceptions. Held that the evidence was nevertheless sufficiently identified. (*Town of Manson v. Ware*, 63 Iowa, 345, followed; and *Hill v. Holloway*, 52 Id., 678, and *Wells v. Burlington, C. R. & N. R'y Co.*, 56 Id., 520, distinguished.)

2. **Practice on Appeal:** EVIDENCE TO SUPPORT VERDICT. It is a well settled rule of this court not to interfere with a verdict on the ground that it is not supported by the evidence, where the evidence is conflicting. But in this case, where plaintiff in his petition, sworn to shortly after the alleged cause of action occurred, stated the pivotal fact of his case in a way which might have defeated his recovery, and in an amendment, verified nearly two years later, he alleged the pivotal fact in quite another way, and all the witnesses except himself (seven in number) testified to the fact as alleged in the petition, and all the circumstances surrounding the case were such as to corroborate their testimony, and he alone testified to the fact as alleged in the amendment, *held* that it was the duty of this court to reverse a judgment rendered on a verdict for plaintiff.

*Appeal from Keokuk District Court.*

MONDAY, DECEMBER 13.

PLAINTIFF was an employe of the defendant on a construction train. He was a laborer, engaged with others in placing on the train timbers lying along the road. He rode

on the train from a station, and when the timbers at one place were loaded he rode on the train to another place, and at night rode on the train to where the men stopped until morning. He was injured while attempting to get on the train. There was a verdict for plaintiff, judgment, and the defendant appeals.

*Chambers, McElroy & Carver*, for appellant.

*Smith & Talley* and *G. D. Woodin*, for appellee.

SEEVERS, J.—I. The plaintiff asks that the evidence be stricken out because it is not sufficiently identified in the bill

1. BILL OF exceptions: identification of evidence.

of exceptions. The bill of exceptions states that "the evidence taken in this cause by E. H. Waring, official reporter of this court, * * * is all the evidence taken therein. * * * Said report of evidence is entitled in the cause and filed therein April 9, 1886, and certified to by said reporter and the judge of this court, and marked 'Exhibit A' to this bill of exceptions." The foregoing reference we understand is to the original short-hand notes, a translation of which was afterwards made, certified to by the reporter and judge, and filed in the clerk's office. But neither the original nor the translation was marked "Exhibit A," and attached to the bill of exceptions. But it seems to us, notwithstanding this omission, that the evidence is sufficiently identified. It is the evidence taken and certified to by the official reporter and judge that is referred to. As to this there could not be any mistake. The bill of exceptions in this case is similar to that in *Town of Manson v. Ware*, 63 Iowa, 345, and materially different from *Hill v. Holloway*, 52 Iowa, 678, and *Wells v. Burlington, C. R. & N. R. Co.*, 56 Iowa, 520. The motion to strike out the evidence must be overruled.

II. The negligence complained of is stated in the petition as follows: "The engineer backed up, neither giving

**2. PRACTICE on appeal: evidence to support verdict.** any signal nor blowing any whistle. Conductor hallooed, 'All aboard!' and your petitioner was getting on board of a flat car in a hurried manner, and slipped in between the bumper and wood-catcher, and injured his knee and leg." This petition was filed November 12, 1884, and was verified. In 1885, an amendment to the petition was filed, which need not be further mentioned. On the eighth day of April, 1886, a second amendment to the petition was filed, in which the negligence of the defendant is stated as follows: "Thereupon the conductor of said train called to said employes, 'All aboard on the flat car!' whereupon the plaintiff without fault and negligence on his part, attempted to get on said flat car; and, while doing so, the engineer in charge of said train, * * * with gross negligence, * * * backed said train, whereby the knee of plaintiff was caught between the bumper and dead-wood of said car, and greatly injured." This amendment to the petition was also verified. There is no evidence tending to show that the defendant or its employes were in any respect negligent, unless it consisted in not giving the plaintiff a sufficient or reasonable time to get on the train after all hands were directed to get aboard. Therefore, the material allegation of negligence was whether the conductor directed the plaintiff to get aboard the train, or to get aboard the flat car. If the former, then the plaintiff, under the instructions of the court, may have been guilty of contributory negligence; so that the case was tried upon a petition and amendment thereto, which stated the pivotal fact materially different, and both were, as we have stated, verified.

The plaintiff, when on the witness stand, testified that, "when the piling were shoved even, the engine was coupled to the flat car. Then 'All aboard on the flat car!' was hallooed." He made this statement several times when testifying. On cross-examination he admitted the statement in the petition, but made no explanation as to how he came to make

it. Andrew Lush, one of the gang working with plaintiff, was a witness introduced by the plaintiff. He testified that he heard "All aboard!" hallooed by some one, and he thinks it was the conductor's voice. The conductor testifies that such was the order given. The brakeman, engineer and fireman testify that the order given by the conductor was "All aboard!" and so does James Nichols, who was an employe on the train, but in what capacity we are not sure. As there were two brakemen who testified in the same way, there were seven witnesses who testified that "All aboard!" was the order, and the plaintiff alone testified that the order was, "All aboard on the flat car!"

If the conductor gave the order which plaintiff testifies he did, then all the men were required to get on the flat car on which timbers had been loaded. They, however, did not do so. The plaintiff testifies that there were thirty men in the gang. This fact makes it improbable that any such order was given. It is not pretended that the plaintiff had superior opportunities for hearing, nor is it pretended that there was any reason existing for such an order; and it is an undisputed fact that there was a box car in the train, provided with seats, and specially intended for the men to ride in.

Notwithstanding the foregoing considerations, we are not prepared to say that, under the well-recognized rule prevailing in this court, (if there was nothing else,) we could disturb the verdict. There is, however, we think, a consideration which remains to be mentioned, and which is controlling; and that is the verification of the petition. The accident occurred on the thirteenth day of August, 1884, and in November afterwards the petition was verified and filed. This was so shortly after the accident that it must be presumed that the plaintiff then recollected all the facts. It so materially detracts from the weight and credit to be given to his evidence, when no explanation whatever is made which has any tendency to lessen its force, that we feel constrained to hold that the motion for a new trial should have been sus-

tained on the ground that the jury, in finding the verdict, must have been governed by passion or prejudice. We feel so thoroughly impressed, from the whole record, that this is so, that we feel we would be derelict in our duty if we did not so hold.

The judgment of the district court must be

REVERSED.