MAYES, ADM'R, v. TURLEY ET AL.

| 60 | 407 |
|----|-----|
| 100 | 461 |
| 60 | 407 |
| 118 | 336 |

1. **Administrator:** ACTION BY: EVIDENCE: PERSONAL TRANSACTION. Where witness, one of the defendants, had in his possession the decedent's money in question, but handed it to the decedent, who afterwards handed it to the wife of the witness, the other defendant, *held* that what was then and there said by decedent and the wife of witness as to the money and the consideration for which it was given to her, was not a personal transaction between witness and the decedent, and that witness was properly allowed to testify thereto.

2. **Pleading:** ALLEGATION OF ADMINISTRATORSHIP: HOW CONTROVERTED: INSTRUCTION. Where the plaintiff in his petition avers "that he is the duly appointed, qualified and acting administrator," etc., such averment is not put in issue by a general denial, but only by alleging the facts relied upon to show that the averment is not true. Code, § § 2716, 2717. And where, in such a case, a general denial was pleaded, it would have been proper for the court to instruct the jury as to its legal effect; but an omission so to do was not reversible error, where other instructions given averted all dangers of the jury's being misled by such omission.

*Appeal from Pottawattamie Circuit Court.*

MONDAY, JANUARY 18.

THE plaintiff is the duly appointed and qualified administrator of the estate of one Harrison V. Osborn, deceased. As such he brings this action to recover of the defendants for certain money, which it is alleged belongs to the estate, and has come into the hands of the defendants, and is wrongfully retained by them.

The defendants for answer pleaded a general denial. Afterward they filed an amendment in which they averred in substance that the defendant, Louisa J. Turley, received the money in question under a contract with the decedent, whereby, in consideration of the money, she was to furnish him a home, and provide him food and clothing, and care in sickness, during the remainder of his life.

There was a trial by jury, and verdict and judgment were rendered for the defendants. The plaintiff appeals.

*Smith*, *Carson & Hart* and *F. B. Hart*, for appellants.

*Sapp & Lyman*, for appellee.

ADAMS, J.—I.   On the 25th day of June, 1879, the plaintiff's intestate was a pauper, in very feeble health, and an inmate of the poor-house of Pottawattamie county.   About that time he received $694, as a pension, which money, with the intestate's consent, passed into the hands of the defendant, Louisa J. Turley, wife of the defendant, Marshall Turley, and she caused the intestate to be removed from the poor-house and to be provided for during the remainder of his life, which terminated on the 7th day of July following.   She claims that she received the money under a contract to provide for the intestate during the remainder of his life, and that she fully performed the contract upon her part.   The plaintiff denies that the record discloses any evidence of such contract. As proving such contract, the defendants rely upon the testimony of one Arthur Mueller, their grandson.   He testified in these words:   "Mr. Osborn had given my grandfather orders, as I understood, to go down and draw the money. He brought the money up and turned it over to Harry Osborn, and Harry Osborn turned it over to my grandmother. When he handed the money to her, he said:   'You are to take care of me as long as I live.'   My grandmother gave him to understand and answered in the affirmative, that she was to take care of him as long as he lived, whether it was two weeks or two years, and he was never to go back to the poor-house."   The defendants also rely upon the testimony of the defendant, Marshall Turley, who, when asked what the arrangement between his wife and the intestate was, testified in these words:   "The arrangement was this, Mrs. Turley was to receive the pension money, and was to take care of him     *     *     *     *  .   Mrs. Turley took the money. He gave it to her, and she agreed that he should never go back to the poor-house any more."

The plaintiff endeavors to meet this testimony by saying

that the witnesses are not to be believed; that circumstances were such as to show that the intestate was defrauded; and, at most, that the evidence only shows that Mrs. Turley was to receive the money for safe keeping, and to be reimbursed from it her reasonable charges.

These considerations raise questions which were properly addressed to the jury. They were answered by the verdict, and the verdict, we think, is not without support.

II. The plaintiff, however, contends that the court erred in the admission of evidence. When the defendant, Marshall Turley, was asked as a witness to state the arrangement between his wife and the intestate, the plaintiff objected upon the ground that the witness was a party to the action, and was called upon by the interrogatory to testify to a transaction between the decedent and the witness. The objection was doubtless made under section 3639 of the Code.

1. ADMINIS-TRATOR: action by: evidence: personal transaction.

The question presented is as to whether the interrogatory called for testimony respecting a transaction between the decedent and the witness.

Upon its face, it certainly did not. But the plaintiff sought to charge the witness with the money, and showed it into his hands, and the plaintiff contends, if we understand him, that the arrangement between the decedent and Mrs. Turley involved incidently a transaction between the decedent and the witness, because, if such arrangement was made, it had the effect to relieve the witness from liability. Whether, if the witness had retained the money and sought to escape liability solely by reason of the arrangement inquired about, he could be allowed to testify, we need not determine. It was shown by the undisputed testimony of Mueller above set out that, previous to the arrangement inquired about, the money had been delivered by Marshall Turley to the decedent. The witness, then, was not relieved of liability by reason of the arrangement, and in no sense did the arrangement involve even

incidentally a transaction between the decedent and the witness. We think the objection to the testimony is not well taken.

III. The plaintiff averred in his petition "that he is the duly appointed, qualified and acting administrator of the estate of Harrison V. Osborn, deceased." The defendants for answer "say they deny each and every allegation in said petition contained." The court in stating the issues to the jury said, among other things: "The defendants for answer deny every matter and thing alleged by the plaintiff." The plaintiff asked the court to give an instruction in these words: "The averment in the petition that the plaintiff was the administrator of the estate of Osborn was not denied by the answer, and was, therefore, admitted." This instruction the court refused to give, and the plaintiff excepted. It may be conceded that the fact that the plaintiff was duly appointed and qualified administrator was not put in issue, notwithstanding the general denial contained in the defendant's answer. It is sufficient for a person serving as administrator to aver generally, as a legal conclusion, that he is such administrator, and if the defendant desires to take issue upon the averment, it is not sufficient for him to do so by a general denial, but he should aver the facts relied upon as a showing that the plaintiff is not duly appointed and qualified administrator. Code, § § 2716 and 2717. It would have been proper for the court to instruct the jury upon these provisions of the statute. But we are not prepared to say that the instruction asked should have been given. It was not true that the plaintiff's averment was not denied. According to the literal meaning of the words used, it was denied. The instruction asked would have appeared to the jury manifestly incorrect and would, we think, have tended to confuse them. The correct instruction would have been that the denial alone was an insufficient answer to the averment, and that the jury could not

*2. PLEADING: allegation of administratorship: how controverted: instruction.*

properly take notice of it, and they would, therefore, consider it admitted that the plaintiff was duly appointed and qualified administrator.

IV. The plaintiff assigns error for want of a proper instruction upon this point. Possibly we might think that the court erred for want of that instruction, if other instructions had not been given which, it must be assumed, controlled the jury. The court instructed the jury in substance that the plaintiff would be entitled to recover if he had shown by a preponderance of evidence that the defendants, or one of them, received the money, unless the defendants had succeeded in establishing, by a preponderance of evidence, the contract set up in their answer, and the performance thereof upon their part. This instruction eliminated all inquiry in relation to the plaintiff's qualification to sue as admistrator.

We see no error, and the judgment of the Circuit Court must be

AFFIRMED.