WILLIAM D. MEAD, JR., v. FRANK L. WEAVER.

FILED OCTOBER 3, 1894. No. 5784.

1. **Witnesses**: CONVERSATION WITH DECEASED CO-PLAINTIFF: PROOF. On suggestion of the death of one of two plaintiffs, where it had been ordered that the action proceed in the name of the survivor as plaintiff, *held*, that thenceforward said survivor was such representative of the deceased that a conversation between one of the parties interested and deceased was not provable by such interested party's testimony.

2. **Attorneys' Fees:** Taxation in Federal Courts. The taxation of attorneys' fees by the federal courts is a matter of which such courts have sole cognizance, and such taxation cannot in the state courts be impeached as being contrary to public policy.

Error from the district court of Douglas county. Tried below before Ferguson, J.

The opinion contains a statement of the case.

*William A. Redick*, for plaintiff in error:

The court erred in refusing to admit testimony as to conversations with E. W. Whipple, deceased. (*Shain v. Forbes*, 23 Pac. Rep. [Cal.], 198; *Hess v. Lowery*, 122 Ind., 225; *Kansas Mfg. Co. v. Wagoner*, 25 Neb., 442; *Bates v. Forcht*, 1 S. W. Rep. [Mo.], 120; *Magenau v. Bell*, 13 Neb., 249; *Wolf v. Madden*, 47 N. W. Rep. [Ia.], 981; *Apperson v. Exchange Bank*, 10 S. W. Rep. [Ky.], 801.)

The attorney should not be allowed to recover. (*Hopping v. Quin*, 12 Wend. [N. Y.], 517; *Scobey v. Ross*, 5 Ind., 445; *Semmes v. Western Union Telegraph Co.*, 20 Atl. Rep. [Md.], 127; *In re Breckenridge*, 31 Neb., 490.)

*Weaver & Giller* and *C. A. Baldwin, contra*, contending that the testimony relating to conversations with E. W. Whipple, deceased, was properly excluded, cited : *Wamsley v. Crook*, 3 Neb., 344.

Ryan, C.

This action was begun in the county court of Douglas county by Ernest W. Whipple and Frank L. Weaver, as partners doing business in the name and style of Whipple & Weaver. After an appeal had been taken to the district court, the death of Ernest W. Whipple was suggested, and on motion it was ordered that the case proceed in the name of Frank L. Weaver, the remaining party plaintiff. In

the petition it was averred that plaintiffs were practicing attorneys, and that during the month of December, 1888, the defendant William D. Mead placed certain notes, secured by two mortgages, in the hands of plaintiffs with instructions to foreclose the same in the United States circuit court for the district of Nebraska, and promised to pay plaintiffs for such services, and plaintiffs promised to take therefor whatever sum the said court should allow as attorneys' fees; that pursuant to such instructions and in consideration of the aforesaid promise, plaintiffs began two foreclosure suits in favor of the aforesaid William D. Mead, —one on December 14, 1888, against George J. Paul and Gustave B. Hengen, and the other on December 26, 1888, against George J. Paul and George B. Tzschuck, and prosecuted said suits to judgment; that in each of said foreclosure actions a request for stay was duly filed. It was further alleged by the plaintiffs that as attorneys in said foreclosure proceedings they obtained an allowance of the sum of $175 as attorneys' fees in each case, and that about the expiration of the stays taken they were discharged as attorneys from both foreclosure cases, and that after discharging plaintiffs as such attorneys, William D. Mead settled and satisfied of record the judgment rendered in the case first above described. The recovery of judgment for the above aggregate sum of $350, with interest thereon from July 8, 1889,—the date whereon the two decrees of foreclosure were entered,—constituted plaintiffs' first cause of action. For their second cause of action the aforesaid plaintiffs alleged in their petition that on the 14th day of June, 1889, they, at the request of William D. Mead, on his behalf commenced injunction proceedings in the said United States circuit court to restrain George J. Paul and others from removing from the premises, on which Mead held a mortgage, certain buildings, constituting a part of the realty mortgaged, and obtained a restraining order as prayed, for which services they claim judgment for the sum

of $100, with interest from June 14, 1889. In the answer it was alleged by way of defense that Mead was a resident and citizen of the state of New York when the aforesaid foreclosure proceedings were begun, while Jamieson was a resident and citizen of the state of Nebraska; that Mead was advised by plaintiffs to bring said foreclosure suits in the circuit court of the United States for the district of Nebraska, and further advised that said suits could not be brought in said court unless said Jamieson assigned and indorsed said notes and mortgages to said Mead, but that if his assignment and indorsement was made, then said Mead, being a citizen of New York, could bring suit in said court against the defendants in the foreclosure proceedings who were all residents and citizens of the state of Nebraska; that in pursuance of the instructions of said plaintiffs, and relying on the advice so given, defendant Mead procured said assignments and said suits were commenced in said court as alleged; that the petition in either of said foreclosure suits did not disclose the residence or citizenship of Jamieson, but alleged the citizenship of Mead and the several respondents in each suit, but nowhere in said suits did the citizenship of said Jamieson appear until after decrees and the expiration of the stays. The defendant furthermore answered that upon expiration of the stays when orders of sale had been issued, the defendant for the first time discovered that the said circuit court had no jurisdiction to foreclose said mortgages on account of the lack of requisite citizenship of Jamieson, the complainant's assignor, and the decrees in said causes were nullities, or the question of their validity so grave that it would be unsafe and unwise to proceed with said sales when the title to the property sold thereat would be defective if not worthless. Thereupon the defendant denied himself the further services of plaintiffs and under the advice of other counsel in good standing as to legal ability, settled one of said suits for the sum of $225 less than the face of the decree; that in the other suit

no settlement could be effected, wherefore Mead was compelled, as he alleged, to go on with the sale and take his chance on the title procured thereat, which he did, and bought the property in at said sale, which was confirmed by the court over the objections of the foreclosure defendants, interposed on account of the want of jurisdiction of said court, which availed nothing except to prevent the recovery of a deficiency judgment, which, but for such want of jurisdiction, should have been rendered for about $2,400. In relation to the injunction proceedings described in the petition, defendant Mead answered that they were simply auxiliary to the foreclosure proceedings, and that the compensation in the foreclosure proceedings provided for should be held to be a discharge of all liability on account of attorneys' fees in said injunction proceedings. The prayer of the answer of defendant Mead was that his damages set forth in his answer as having arisen on account of the malpractice of the plaintiffs should be set off against any amount which might be found due plaintiffs, and that Mead might be dismissed with his costs. By a reply the averments of the answer were denied. A trial of the issues resulted in a verdict in favor of plaintiffs for the sum of $539.87, upon which judgment was duly rendered. To reverse this judgment the defendant, as plaintiff, has filed his petition in error in this court.

It is unnecessary to discuss the evidence adduced in support of each party's contention, for there was sufficient to support a verdict in favor of either party. The contest was largely directed to proof on the one hand that the commencement of the foreclosure proceedings in the federal court was suggested by the defendant in error simply to enable them to secure the taxation of attorneys' fees, notwithstanding the fact known to said defendant in error that to enable Mead, a resident and citizen of New York, to institute such proceedings in the United States court it was necessary that he should secure an assignment from

Mr. Jamieson of his rights as joint owner of the notes secured by the mortgages of which foreclosure was desired. The defendant in error showed by the testimony of Frank L. Weaver that he had no knowledge that Mr. Jamieson was a resident or citizen of Nebraska. The plaintiff in error then offered to prove a conversation between Mr. Whipple (since deceased) and Mr. Jamieson, whereby, as plaintiff in error claimed, it would be shown that Whipple knew that Jamieson was a resident and citizen of Nebraska, and that notwithstanding such knowledge he advised that the assignment should be made and foreclosure begun in the name of William D. Mead as complainant in the federal court. An objection to this proposed testimony was sustained on the ground that as Whipple is now dead, any conversation had between him and a witness adversely interested could not be given in evidence as against Whipple's representative. In section 45 of our Code of Civil Procedure it is provided that in case of the death of a party to an action the court may allow the action to continue by or against his representative or successor in interest. As has already been said, the district court, upon suggestion of the death of Whipple, ordered that the case proceed in the name of Weaver, the surviving plaintiff. By the statute, which conferred power upon the district court to make this order, the party in whose name the action is continued is designated as the "representative" of the deceased. We are not at liberty to ignore this use of the word "representative" when so directly referred to, as we find it in section 329 of the same Code. There had been no evidence given which, under the section just referred to, rendered competent the testimony offered as to the alleged conversation between Jamieson and Whipple. The transfer of the mortgage securities admittedly left Jamieson as much actual interest in the result as before the assignment. The exclusion of the proposed testimony of Jamieson was therefore proper. ( *Wamsley v. Cook*, 3 Neb., 344; *Ransom v. Schmela*,

13 Neb., 74; *Magenau v. Bell,* 13 Neb., 249; *Housel v. Cremer,* 13 Neb., 298.) The exclusion of the proposed testimony of Mr. Mead as to his conversation with Mr. Whipple was proper on the ground just stated and, therefore, will receive no independent consideration.

The defendant, by way of answer, and throughout the trial, insisted that the contract looking to the taxation of attorneys' fees in favor of the defendant in error was one contrary to public policy. No claim was made that the attorneys' fee provision in the mortgages foreclosed was a device for covering up the exaction of unlawful interest, as seems to have been assumed was the case in *Dow v. Updike,* 11 Neb., 97, in which was first questioned the right to tax attorneys' fees. In the opinion just referred to the only other question made of the right to tax attorneys' fees was because in an act passed by the legislature in 1873 that right was recognized, and it was inferred from the repeal of said act that the legislature intended to withdraw and deny this right by which the act repealed had been conferred. Since the filing of the above opinion there have been other decisions of this court based upon the inference just noted. There has also been reprobated a resort to questionable means by attorneys for the purpose of having taxed these fees, but this court has never directly nor indirectly assumed to criticise the power or motives of the federal court in taxing such costs as we have now under consideration.

In respect to the questions argued with reference to instructions given and those refused it is sufficient to say, generally, that there was such a grouping of those complained of in argument with those of which no complaint is, or properly could be, made that we cannot consider them as invited by the plaintiff in error in argument. The judgment of the district court is

AFFIRMED.

IRVINE, C., not sitting.